Alexander Del Gtiorno, J.
This is a claim to recover damages for personal injuries sustained by claimant as a result of an alleged assault and battery committed upon him while an inmate of Creedmoor State Hospital by an attendant at the hospital. Upon the trial the court permitted an amendment to the title of the claim so as to substitute Fredrick J. Rauppius as the claimant in place and stead of his previous committee, because of the fact that said claimant had been declared competent on or about November 21, 1956. The claim has not been assigned in whole or in part.
Claimant, who is now 50 years of age and is unmarried, resides with his parents. Prior to his admission to the hospital, he had been engaged in various occupations, earning a maximum of $65 per week. At the present time he does typewriting work and earns the sum of $75 per week. No special damages are claimed.
On March 3, 1952, claimant was admitted as a patient to Creedmoor State Hospital as a person of unsound mind, by an order of certification of the Supreme Court, Kings County, dated February 29, 1952, and he was duly declared incompetent by an order of the Supreme Court, Queens County, dated January 24, 1955.
The testimony of the claimant is that in the hospital he was assigned to Ward S-9, in S Building, and that he and a few other patients had been permitted to have their meals in the dining room of Ward S-10. On May 23,1954, at about 6:30 a.m., he arose, dressed himself and saw the door open from the corridor of Ward S-9 leading to Ward S-10. He walked through the door and into the corridor of S-10. An attendant at the hospital, James B. Skerritt, walking through the day room of Ward S-9 on his way to Ward S-10, and while in the corridor, opened the door of Ward S-10. Claimant approached Skerritt when the latter was near this door and was asked by him what he wanted. He told Skerritt that he wanted his breakfast. Skerritt refused to give him his breakfast and pushed claimant. Claimant testified: “ I held my ground ”, and that he pushed Skerritt back. Skerritt continued to push him, and two patients *386 from Ward S-10 came to the aid of Skerritt, all three pushing him into a nearby bed and strapping him. During the melee, claimant’s glasses, which he had been wearing, fell off. While he was on the bed straddled by Skerritt, the latter struck him a hard blow in the left eye with his fist, causing his eye to bleed profusely, whereupon the two patients and Skerritt released him. On cross-examination, claimant testified that he had asked Skerritt to let him go home, and also that the two other patients came to the aid of Skeritt of their own volition. In response to a question put to him by the court, claimant stated that when he testified on direct examination that he held his ground, he meant that he stood still; and that what he meant when he asked that he be served breakfast and asked also to go home was that either he be fed or allowed to go home.
The State did not produce Skerritt as a witness. The reason given by the State was that Skerritt is presently attached to the Loring Air Force Base in Maine, and that he would not be released until November 19, 1958. The State’s examination before trial of Skerritt, held on May 6, 1958, was read into the record and presents quite a different version of the occurrence under consideration. He said that he was getting the patients up for breakfast at 5:00 or 6:00 a.m., and that at that time he was going over to the dining hall to get a food cart for the patients. It was his duty to take food to those patients who could not leave the ward, and then to take the patients on the ward to the dining hall. While he was walking 1 ‘ toward the corridor through the ward to reach the dining hall ”, claimant, who was standing close to the doorway, called to Skerritt and told him he wanted to leave. Skerritt told him that he was not to go to the dining hall for breakfast at that time, whereupon claimant told him that he did not want to go to the dining hall, that he wanted to go home, that he did not belong in the hospital. Skerritt explained to him that it was for the doctors to say if he could leave the hospital. As Skerritt “ was going through to go to the other side to get to the dining hall ’ ’, claimant ‘ ‘ tried to break away, break off the ward”, and when Skerritt was going through the door, claimant pushed the door open and jumped on him, grabbing him around the arms. Skerritt pushed claimant back, tried to get loose from his hold and called for help, both spinning around. Skerritt testified that “ I imagine he must have hurt his head on the door ” and that he believed claimant’s head struck the doorjamb. By this time, another patient ran up to help Skerritt, and together they brought claimant to a bed 5 or 10 feet from the doorway. He told this patient to watch claimant while he called the night nurse on duty. He *387 denied that he struck claimant with his fist or with any part of his body, or with any instrument; he denied that at the time he was wearing any ring.
After this incident took place, claimant was removed to the medical Avard, where a doctor removed a blood clot on claimant’s eye and where the eye was removed later. He remained in the medical ward for two or three Aveeks thereafter. The State concedes that the injury to the eye was the result of trauma and that the operation upon and the removal of the eye was the result of the injury sustained. In 1941, claimant had undergone an operation on his left eye for a cataract condition and in 1945 had undergone an operation on his right eye for a similar condition. He claimed that in 1954, at a time prior to the injury, he had been able to see with both eyes, but that now he has difficulty when he reads and that he suffers headaches when he reads a great deal.
The question involved herein is solely one of credibility as between the version of the claimant and that of the State as to the events leading up to and culminating in the altercation. If that of the claimant is to be believed, he must prevail in this claim; if that of the State’s witness can be considered true, then the State cannot be held liable for the resulting injury to claimant.
After most serious consideration of the evidence adduced upon the trial, the court is of the opinion that it cannot accept the version offered by the State. Both claimant and Skerritt are in agreement that they confronted each other. Claimant says that he demanded breakfast or to be allowed to go home; Skerritt says that claimant did not want «breakfast, but wanted to go home. Assuming either or both requests to have been made, there is still no indication per se of any violent or dangerous disposition on the part of the claimant at the time. Indeed, few of those incarcerated by the State believe that they belong Avhere they are or that they are rightfully confined. A request by an inmate to leave does not necessarily put an attendant upon guard from an imminent attack, or justify his using any force upon an inmate. Hor does a refusal on the part of an attendant to grant such a request necessarily anger an inmate so as to cause him to attack an attendant. Further, no evidence was introduced by the State which would show that claimant was violent prior to the incident under consideration.
The court considers it significant that Dr. Reilly, Avho was in charge of the ward at Creedmoor State Hospital, and who was present in court on the trial day, was not placed upon the stand by the State. If the scuffle between the claimant and the *388 hospital attendant had occurred in the manner claimed by the State, and if accordingly claimant had struck the doorjamb in the manner described, it is inconceivable to the court that only the eye would have been injured. On the contrary, under such circumstances, there must have occurred also, and simultaneously, other head, facial or forehead bruises, contusions, cuts or abrasions. If this were so, the court feels it would have been in order for the testimony of Dr. Reilly to have been offered, in order to substantiate the statements made by the attendant. In this regard, no evidence was presented by the State by way of the hospital records concerning the injury to claimant. If these records showed that other head and facial injuries had been sustained, the testimony of the witness Skerritt would have been corroborated to a degree. Failure by the State to present the records causes the court to conclude that the injury was not sustained in the manner described by the State.
The testimony of the attendant Skerritt in his examination before trial, to the effect that he imagined claimant must have hurt his head on the door, and that he believed that claimant’s head struck the doorjamb, is not impressive. Bearing in mind the fact that, according to his own testimony, only he and claimant were scuffling at the time, he must have been in such a position as to be able to see what occurred, and to be able to describe the cause of such an injury as was sustained with certainty.
On the other hand, the court was impressed by the honesty and straightforwardness of the claimant. His manner of testifying was direct, Ms description of the event given with certainty and definiteness. Even though part of Ms testimony under some conditions might have been construed to be against Ms own interest, he offered to describe to the court the events wMeh precipitated the incident, and the incident itself resulting in the injury suffered by him.
The court finds that the attendant Skerritt attacked and struck the claimant without just cause or provocation, and that the force used by him upon the claimant was unnecessary and excessive. For the injuries sustained by the claimant, the court awards the sum of $10,000.
All motions heretofore made by the State upon which decision was reserved are hereby denied.
TMs memorandum constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.